**Erik W. BIGGS, individually and on behalf of all other similarly situated employees, Plaintiffs,**

v.

**QUICKEN LOANS, INC., David Carroll, and Daniel Gilbert, Defendants.**

**Case No. 10–cv–11928.**

United States District Court, E.D. Michigan, Southern Division.

Feb. 19, 2014.

Adam W. Hansen, Robert L. Schug, Nichols Kaster, LLP, San Francisco, CA, Curtis P. Zaun, Paul J. Lukas, Rachhana T. Srey, Nichols Kaster, PLLP, James H. Kaster, Nichols Kaster, Attorney At Law Minneapolis, MN, for Plaintiffs.

Jeffrey B. Morganroth, Mayer Morganroth, Morganroth & Morganroth, Birmingham, MI, Robert J. Muchnick, William D. Sargent, Honigman, Miller, Detroit, MI, for Defendants.

### *ORDER DENYING MOTION FOR SUMMARY JUDGMENT*
(*document no. 141*)

STEPHEN J. MURPHY, III, District Judge.

This is the fourth of four separate actions under the Fair Labor Standards Act ("FLSA") challenging Defendant Quicken Loans' failure to pay allegedly required overtime benefits to Plaintiffs Erik Biggs and several dozen other current and former employees. Defendants now move for summary judgment, arguing that the recent vacation of agency opinion AI 2010–1, warrants granting them summary judgment under Section 10 of the Portal–to–Portal Act for any claims arising after the issuance of AI 2010–1. The Court, having reviewed the papers, concludes that a hearing is not necessary to resolve the motion. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the Court will deny the motion without prejudice.

### STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[ ] to particular parts of materials in the record" or "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1). In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). The Court must take care, in evaluating the motion, not to make judgments on the quality of the evidence, because the purpose of summary judgment is to determine whether a triable claim exists. *Doe v. Metro. Nashville Public Schools,* 133 F.3d 384, 387 (6th Cir.1998) ("[W]eigh[ing] the evidence ... is never appropriate at the summary judgment stage.").

### BACKGROUND

Plaintiffs are current and former mortgage bankers that work for Quicken Loans, who assert that Quicken Loans owes them back overtime payments for hours worked in excess of forty per week

as required by the FLSA. Quicken Loans' business model includes two types of mortgage bankers: "web loan consultants," who work out of Quicken Loans' centralized web call center, and "branch loan consultants," who work out of Rock Financial's traditional branch offices. Defendants assert Plaintiffs were not entitled to overtime compensation because they fell under the "administrative exemption" to the FLSA because of the nature of their jobs as mortgage bankers. The first case, *Henry v. Quicken Loans,* No. 04–40346, on behalf of a set of web loan consultants, proceeded to trial in March of 2011, resulting in a jury verdict for Quicken Loans which was affirmed on appeal. *See Henry v. Quicken Loans,* 698 F.3d 897 (6th Cir. 2012).

Here, Plaintiffs are web loan consultants working for Quicken Loans, who argue they were denied overtime pay as required by the FLSA for a period between the U.S. Department of Labor's promulgation of an Administrator's Interpretation opining that mortgage bankers were not administratively exempt and were due overtime, and the period Quicken Loans reclassified their loan consultants and began paying them overtime—a time period between March 24, 2010 and May 31, 2010.

## I. *Legal Standards, FLSA 2006–31 and AI 2010–1, and Procedural History*

The FLSA requires employers to pay employees who work more than forty hours per workweek overtime wages. Several categories of employees are exempt from this rule, including those "employed in a bona fide executive, administrative, or professional capacity ... or in the capacity of an outside salesman[.]" 29 U.S.C. § 213(a)(1). The U.S. Department of Labor subsequently promulgated regulations outlining the scope of the "administrative" exemption. *See generally* 29 C.F.R. §§ 541.200 *et seq.;* 29 C.F.R. § 541.2(a)(1), (e)(2) (2004). A significant part of the proceedings in *Henry* addressed the proper interpretation of this statute and regulation with respect to the mortgage loan officer plaintiffs.

Although *Henry* ultimately turned on a jury's determination of facts, the Court also examined the history of the Department of Labor's own interpretation of the statute and regulations. Briefly, prior to 2006, there was no single authoritative interpretation of the administrative exemption with respect to mortgage bankers. The Department of Labor had issued two unsigned opinion letters, and district court cases split on the question. *Compare Reich v. John Alden Life Ins. Co.,* 126 F.3d 1 (1st Cir.1997), *with Casas v. Conseco Finance Corp.,* No. Civ. 00–1512, 2002 WL 507059 (D.Minn. Mar. 31, 2002). The Department of Labor then concluded that mortgage loan officers were administratively exempt in an signed, authoritative opinion letter issued by the Wage and Hour Division ("WHD") on September 8, 2006. Wage & Hour Div. U.S. Dept. of Labor, Opinion Letter FLSA 2006–31, Sept. 8, 2006 ("FLSA 2006–31"). Subsequently, in 2010, the Department issued an "Administrator's Interpretation" of the same regulations, in which it concluded that mortgage bankers did *not* fall within the administrative exemption and were eligible for overtime. Wage & Hour Div., U.S. Dept. of Labor, Administrator's Interpretation 2010–1 (Mar. 24, 2010) ("AI 2010–1"). AI 2010–1 also withdrew FLSA 2006–31.

In *Henry* and the instant cases, the Court concluded that after the issuance of FLSA 2006–31, Quicken Loans' reliance on the letter in classifying Plaintiffs as administratively exempt from overtime constituted the basis for good faith reliance for the

purposes of Section 10 of the Portal–to–Portal Act, which served as a full defense to the FLSA overtime action for the period after the letter's issuance on September 8, 2006. *Henry*, Order Overruling Objections, ECF No. 571 (adopting Report and Recommendation ("Report"), ECF No. 555).[1] The Court noted that it was objectively reasonable for Quicken Loans to rely on a WHD opinion letter, that Quicken Loans evaluated the text of the letter carefully compared to other Department of Labor guidelines and other laws and cases, and that Quicken Loans acted in conformity with the letter. As such, no reasonable jury could conclude that Quicken Loans did not act in good faith reliance on FLSA 2006–31. Report at 24–33.

The Court also initially chose to award FLSA 2006–31 a controlling degree of deference. *Henry*, Report and Recommendation 39, July 16, 2009, ECF No. 556 (citing *Auer v. Robbins*, 519 U.S. 452, 461–62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997); *Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.*, 204 F.3d 673, 676–79 (6th Cir.2000)). Once AI 2010–1 issued, the Court considered the matter anew with additional briefing by the parties, and an *amicus* brief from the U.S. Department of Labor regarding what, if any, level of deference the Court owed AI 2010–1 in interpreting the relevant regulations. After a hearing, the Court ultimately denied Defendants' motion for reconsideration of the legal conclusion on January 27, 2011, finding that, based on a revised assessment of the administrative exemption regulation and the interpretative guidance, first, although the parties agreed that AI 2010–1 rescinded FLSA 2006–31, the rescission

did not have retroactive effect; and second, that FLSA 2006–31 was not entitled to deference by the Court. But even so, the Court concluded the change in deference would not affect the Court's prior rulings in the case, and accordingly the Court denied the motion for reconsideration. *Henry*, Order Denying Mot. for Reconsideration 27, ECF No. 666 ("the Court reaffirms its conclusion that summary judgment for Quicken on the issue of good faith reliance was proper").

In the instant case, the Court again granted Defendants' motion for summary judgment for the same period as to the instant plaintiffs, adopting the reasoning of its ruling in *Henry* after concluding that because "[t]here is no dispute that the factual and legal issues" in Defendants' motion for summary judgment are "identical to the issues" in *Henry*, *stare decisis* required an identical result. Order Granting Mot. for Summ. J. on Good Faith Defenses 4, ECF No. 113 (citing *Rutherford v. Columbia Gas*, 575 F.3d 616, 617 (6th Cir.2009)).

## II. *The D.C. Circuit's Opinion Vacating AI 2010–1*

In *Mortgage Bankers Ass'n. and Jerome Nickols, et al. v. Thomas Perez*, No. 11–0073 (D.D.C.), plaintiffs Mortgage Bankers Association ("MBA") and intervenors Jerome Nickols, et al., challenged the validity of AI 2010–1. The MBA brought the action under Section 702 of the Administrative Procedures Act ("APA"), *see* 5 U.S.C. § 702. The MBA argued that the Department of Labor violated the APA when it issued AI 2010–1 without first engaging in

---

1. The Portal–to–Portal Act states in relevant part, at 29 U.S.C. § 259:

   no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay ... overtime compensation under the Fair Labor Stan-

dards Act ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the [relevant federal agency].

notice-and-comment rulemaking procedures. The district court initially dismissed the challenge in *Mortgage Bankers Ass'n v. Solis*, 864 F.Supp.2d 193, 195 (D.D.C.2012).

But the D.C. Circuit heard the appeal in *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (2013), and reversed. The D.C. Circuit first noted its prior precedent holding the "ostensibly" straightforward rule, enunciated in *Paralyzed Veterans of America v. D.C. Arena L.P.*, 117 F.3d 579 (D.C.Cir.1997) and *Alaska Professional Hunters Ass'n v. FAA*, 177 F.3d 1030 (D.C.Cir.1999), that "[w]hen an agency has given its regulation a definitive interpretation, and later significantly revises that interpretation, the agency has in effect amended its rule, something it may not accomplish [under the APA] without notice and comment." *Id.* at 967. The question in *Mortgage Bankers Ass'n* was whether, to consider an agency action such an amendment, there existed a "substantial and justifiable reliance on" the interpretation. *Id.* at 968 (quoting *MetWest Inc. v. Secretary of Labor*, 560 F.3d 506 (D.C.Cir. 2009)).

The D.C. Circuit concluded that, contrary to the assertion that the *MetWest Inc.* case created a "substantial and justified reliance prong" necessary to require notice-and-comment rulemaking for "significant" revision of an interpretation, *Alaska Hunters* actually stood for the proposition that in certain circumstances, "substantial and justifiable reliance" could effectively "elevate" a non-definitive interpretation into a definitive one. *Id.* at 969. When an agency interpretation was definitive, in contrast, there was no "substantial and justified reliance" requirement as long as the agency significantly revised the rule. *Id.* at 971. Applying that conclusion, the D.C. Circuit concluded the Department of Labor had revised a definitive interpretation without notice-and-comment, reversed the district court, and instructed the district court to vacate AI 2010–1. *Id.* at 972. The court issued its mandate on October 11, 2013, and the district court ordered the Department of Labor to cease enforcement of AI 2010–1. *Mortgage Bankers Ass'n v. Perez*, ECF No. 48 (D.D.C. Oct. 23, 2013).

## DISCUSSION

In light of *Mortgage Bankers Ass'n*, Defendants move for summary judgment under Section 10 of the Portal–to–Portal Act for the period between March 24, 2010, and May 31, 2010. Defendants argue that with AI 2010–1's vacation, FLSA 2006–31 now is "back" in effect, and more accurately, was always in effect any time after its issuance in 2006—and after March 24, 2010—because it was never validly rescinded. Thus, Defendants argue, since the Court concluded that Quicken Loans met the good faith defense in Section 10 for the period after FLSA 2006–31 issued, and FLSA 2006–31 is in effect, they should be granted summary judgment for the time period at issue here, and on the entire case.

Defendants' motion relies on the fundamental assumption that the D.C. Circuit's decision in *Mortgage Bankers Ass'n* vacating AI 2010–1, and the district court's subsequent injunction of the Department of Labor, applies on a national basis and vacates the interpretation in this circuit. *See* Mot. for Summ. J. 11, ECF No. 141 ("The D.C. Circuit Court Definitively Held That [AI 2010–1 is invalid]" and "The 2006 Opinion Letter Has Been Restored").

The question, however, of whether the D.C. Circuit's decision vacating AI 2010–1 applies "across the board" is not as clear-cut as it may initially seem. In fact, the precedent and practice of federal judicial review of agency action strongly suggests

that such review proceeds on a circuit-by-circuit basis, just as judicial review of an ordinary statute would. Notably, in *Cumberland Med. Ctr. v. Secretary of Health & Human Servs.*, 781 F.2d 536 (6th Cir. 1986), the Sixth Circuit joined seven other circuits in striking down an agency rule deemed to have been issued in contravention of the APA. *Id.* at 538. But, although the challenges to the regulation in question, like the one here, concluded that the regulation was invalid, the Sixth Circuit—and the other Circuits—independently determined that the regulation was invalid for their own circuits, rather than simply holding that the first circuit to strike the rule had done so on a national basis. *See, e.g., St. James Hosp. v. Heckler*, 760 F.2d 1460, 1473 (7th Cir.1985) (examining circuit opinions and concluding "we must set aside the Rule").

■ Judicial review of agency regulations or agency action more broadly is also consistent with a circuit-by-circuit basis for action. *See Davidson v. U.S. Dep't of Energy*, 838 F.2d 850, 856 (6th Cir.1988) (independently concluding agency regulation was properly promulgated under APA and comparing Ninth Circuit's upholding of the same regulations);[2] *compare Murray v. Stuckey's, Inc.*, 939 F.2d 614, 618 (8th Cir.1991) *with Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) (circuits will independently interpret the meaning of federal regulations); *see also Bhd. of Locomotive Engineers v. Atchison, Topeka & Santa Fe R. Co.*, 516 U.S. 152, 162, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996) (resolving circuit split where two circuits reached opposite conclusions about a federal agency's interpretation of

applicable statute). Thus, precedent actually suggests that a court's decision reviewing an agency action is like any other judicial action, and that an agency action is not necessarily authoritatively invalid on a national basis, but only within the judicial circuit that issued the opinion.

■ Defendants cite *National Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399 (D.C.Cir.1998) for the proposition that regulations stricken as invalid are stricken on a national, not circuit-wide basis. But *National Mining Ass'n* does not go so far. *National Mining Ass'n* stands for the unremarkable, narrower proposition that an injunction issued by the district court in the case was valid against the agency on a national basis, not merely within the geographic jurisdiction of the court. *Id.* at 1409. The Court agrees that federal district courts have broad power to issue injunctive relief, and may enjoin parties' actions beyond the district in which it sits. *See, e.g., Ave Maria Found. v. Sebelius*, 13–CV–15198, 991 F.Supp.2d 957, 2014 WL 117425 (E.D.Mich. Jan. 13, 2014) (Murphy, J.) (enjoining enforcement of agency regulation against party located outside the Eastern District of Michigan). And, thus, if the Department of Labor were to try and enforce AI 2010–1 on a prospective basis in this district, the question would be much different, and the Court would likely declare the Department of Labor in violation of the D.C. district court's proper order.

But the broader point as to whether—and *why*—AI 2010–1 is invalid or invalid on a retrospective basis, is not answered by *National Mining Ass'n*[3] The proposi-

---

**2.** The corollary of the power to enjoin a regulation as invalid may be conceived of as the power to uphold a regulation as valid; *Davidson* stands for the proposition that circuits will independently uphold regulations.

**3.** The Tenth Circuit in *Contreras–Bocanegra v. Holder*, 678 F.3d 811 (10th Cir.2012), noted that although it joined multiple other circuit in invalidating an agency regulation, the circuits split on the reasoning the regulation was

tion that a district court may issue injunctions that bind parties outside its geographic jurisdiction is distinct from whether *this* Court *must*, as a matter of binding order or precedent, adopt the D.C. Circuit's conclusion that AI 2010–1 is void *ab initio.* As discussed above, *Cumberland Med Ctr.* clearly demonstrates the Sixth Circuit has previously acted under the rule that agency regulations like the one in *National Mining Ass'n* may be stricken on a circuit-by-circuit basis, and independently by each circuit. The fact that the Department of Labor has been enjoined from enforcing AI 2010–1 on a prospective basis does not necessarily lead to the conclusion that the rule was void *ab initio* for the relevant time period in 2010, and for the same reasoning, with respect to courts of the Sixth Circuit. Accordingly, the Court concludes that the D.C. Circuit's decision and order to strike AI 2010–1 does not automatically invalidate the rule on a retrospective basis for courts in the Sixth Circuit or the instant case.

More generally, as a decision by a Circuit outside of the Sixth, *Mortgage Bankers Ass'n* is not binding appellate precedent that this Court must follow. *Fitzgerald v. Mallinckrodt, Inc.,* 681 F.Supp. 404, 407 (E.D.Mich.1987); *see generally Berryhill v. United States,* 199 F.2d 217, 219 (6th Cir.1952). The Court

is not required to conclude that, solely under *Mortgage Bankers Ass'n,* AI 2010–1 is invalid.[4]

■ Stepping back, the immediate question at hand is whether Defendants are entitled to summary judgment under Section 10 of the Portal–to–Portal Act To reach the ultimate question as to whether Defendants acted in good faith between March 24, 2010 and May 31, 2010, Defendants assume that AI 2010–1 is invalid. But the Court must independently decide whether AI 2010–1 is invalid.[5] The Court concludes it will not grant summary judgment that requires it to answer an implicit question that is not specifically before this Court, has already been initially decided, and has not been fully briefed.

Finally, although the Court did grant Defendants' motion for summary judgment for good faith under the Portal–to–Portal Act for the period between FLSA 2006–31 and March 24, 2010, it is not beyond dispute here that Defendants may rely on a defense asserting their own good faith actions after March 24, 2010. Because Defendants' instant motion is premised on the extension of an administrative and legal ruling, they have understandably not attached discovery or other evidence attesting to this fact. With the lifting of the stay in this case, the Court will consider such evidence if and when it is produced.[6]

---

invalid. *Id.* at 816 (comparing the disparate reasoning in *Prestol Espinal v. Att'y Gen.,* 653 F.3d 213, 217–24 (3d Cir.2011) with *Pruidze v. Holder,* 632 F.3d 234, 240 (6th Cir.2011)).

4. And, the *Alaska Hunters* rule that the D.C. Circuit relies on itself has not been adopted by every circuit, as the court in *Mortgage Bankers Ass'n* noted. *Mortgage Bankers Ass'n v. Harris,* 720 F.3d 966, 969 n. 3 (D.C.Cir. 2013) ("the Courts of Appeals are split on the issue"). *Mortgage Bankers Ass'n* also notes a difference in opinion regarding the scope of the circuit split on the *Alaska Hunters* rule, with one court concluding the Sixth Circuit

followed the rule, and one court concluding it did not. *Id.* The Court will not conclude the Sixth Circuit would necessarily strike AI 2010–1 on identical grounds.

5. The Court must also decide the corollary question as to the proper effect of AI 2010–1's vacating and the reinstatement of FLSA 2006–31 on a retrospective, rather than prospective, basis.

6. The distinction between relying on the Court's findings of fact with respect to conditional certification on one hand, and declin-

## CONCLUSION

The D.C. Circuit's vacating of AI 2010–1 does not apply nationally, its decision is not a binding appellate decision on courts of the Sixth Circuit, and the Court is therefore not required to accept the conclusion that AI 2010–1 is invalid. The Court will not decide the question on an implied basis without further argument or hearing. Accordingly, the Court will deny the motion for summary judgment without prejudice.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion for summary judgment (document no. 141) is **DENIED WITHOUT PREJUDICE.**

**SO ORDERED.**

ing to do so with respect to summary judgment on the other, is clear: while the first is only conditional, and may be challenged at a later date with proper evidence, the second is dispositive and final.